Michael G. Rix, Esq. (SBN: 233653)
LAW OFFICES OF MICHAEL RIX
25060 Avenue Stanford, Suite 255
Valencia, CA 91355
Telephone: (661)505-6309
Facsimile: (661)964-1320
Email: michael@rixlaw.com

Attorneys for Plaintiff,
DIANE GEIGER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS M. MCCARTHY<br><br>        Plaintiff,<br><br>Vs.<br><br>PRINCESS CRUISE LINES, LTD.,<br>JACOBUS D. VENTER M.D.,<br>SHANNON D. CALLAWAY, M.D. | **Case No.:   2:18-cv-00849**<br><br><br>**COMPLAINT FOR DAMAGES FOR<br>PERSONAL INJURIES; DEMAND<br>FOR JURY TRIAL** |

COMES NOW the plaintiff, DIANE GEIGER (hereinafter "Plaintiff") and for a cause of action against defendants, and each of them, complains and alleges as follows:

## **JURISDICTION AND VENUE**

1.     This is an action for damages for personal injuries suffered while Plaintiff was a fare paying passenger aboard a cruise ship operating on navigable waters. Jurisdiction is vested in this Court under 28 U.S.C. § 1333 and the general maritime law of the United States.  Venue is proper in this District pursuant to 28

U.S.C § 1391(b) because Defendant PRINCESS CRUISE LINES, LTD. is a foreign corporation with its principal place of business in Los Angeles County, California and based on the forum selection clause included in the terms of Defendants' passage contract requiring that all disputes "shall be litigated before the United States District Courts for the Central District of California in Los Angeles."

## THE PARTIES

2.     At all times herein material, Plaintiff was and is a resident of the State of Utah.

3.     At all times herein material, Defendant PRINCESS CRUISE LINES, LTD., (hereinafter "PRINCESS") was a corporation doing business in, and with its principal place of business in the County of Los Angeles.

4.     At all times herein material, Defendant PRINCESS is a common carrier engaged in the business of marketing, selling and operating a cruise line out of various ports within the continental United States, including Los Angeles, California.

5.     On or about February 4, 2017 and at all times herein material, Defendant PRINCESS owned, managed, operated, maintained, supervised, inspected and/or controlled the ocean-going passenger vessel known as *Ruby Princess* which was, at all time herein material, operating on navigable waters of the United States and the high seas.

6.     At all times herein material, Defendant JACOBUS D. VENTER M.D. (hereinafter "VENTER") was an employee, apparent agent and/or actual agent of Defendant PRINCESS, working the aboard *Ruby Princess* as a ship's physician and acting within the course and scope of said employment and/or agency.

7.     At all times herein material, Defendant SHANNON D. CALLAWAY M.D. (hereinafter "CALLAWAY") was also an employee, apparent agent and/or actual agent of Defendant PRINCESS, working the aboard *Ruby Princess* as a

ship's physician and acting within the course and scope of said employment, and/or agency.

## **GENERAL ALLEGATIONS**

8.     At all times herein material, Defendant PRINCESS was a member of the Cruise Lines International Association ("CLIA").

9.     At all times herein material, Defendant PRINCESS was required to have on board, a full-time, emergency medical professional, pursuant to the Cruise Industry Passenger Bill of Rights.  Article 3 of the International Cruise Line Passenger Bill of Rights provides as follows: "The right to have available on board ships operating beyond rivers or coastal waters full-time, professional emergency medical attention, as needed until shore side medical care becomes available."

10.    The requirement to carry full-time emergency medical professional onboard PRINCESS vessels, constitutes a formal adoption of cruise industry practices.  In the words of CLIA's president and CEO

> The Cruise Industry Bill of Rights codifies many longstanding practices of CLIA members and goes beyond to further inform cruise guests of the industry's commitment to their comfort and care."  Thus, "[b]y formally adopting industry practices into a 'Passenger Bill of Rights,' CLIA is further demonstrating consistent practices across CLIA member lines.  The cruise industry is committed to continue to deliver against the high standards we set for ourselves in all areas of shipboard operations."

11.    The International Cruise Line Passenger Bill of Rights is a requirement imposed on all CLIA members.  Adoption is a condition of membership.  For that reason, every single cruise line, including PRINCESS, adopted it.

/ / /

3

12.     As a result of the requirement for PRINCESS to have on board, a full-time, emergency medical professional, Defendant PRINCESS did not carry Defendants VENTER and CALLAWAY on board *Ruby Princess* for the convenience of its passengers; rather, Defendant PRINCESS employed and/or contracted with and/or provided Defendants VENTER and CALLAWAY on board *Ruby Princess* in connection with its operation of the vessel as part of Defendant PRINCESS' business of operating cruise ships.

13.     All in all, Defendant PRINCESS is in the business of providing medical care.  Like other amenities offered aboard its ships (i.e. bars, restaurants, spas), Defendant PRINCESS also offers to passengers modern medical facilities onboard its ships for profit.  This was recently recognized by the Eleventh Circuit Court of Appeals in the case of *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1244, n. 14 (11th Cir. 2014) (emphasis added):

> What's more, we suspect that Franza's allegations only scratch the surface. We have no difficulty imagining other cases in which additional evidence could demonstrate a cruise line's medical expertise—particularly since, in the public domain, cruise lines routinely claim to possess such knowledge. *See, e.g.,* Peltz, *Has Time Passed Barbetta by?,* at 19 (quoting statement by Director of Princess Cruise Lines Medical Department claiming that "major cruise lines have designed modern medical facilities comprising several ICUs, computerized radiology, and sophisticated laboratories" and "have achieved accreditation to international health care standards and ISO 9001 certification"); *id.* at 14–16 (noting that sixteen major cruise lines cooperated with American College of Emergency Physicians to develop and adopt "industrywide guidelines" addressing "unique needs and limitations of shipboard medical infirmaries"); . . .We do not

credit as fact any information not pled in the complaint, but we note that another plaintiff could have cited any of this information to rebut the basic assumption that cruise ships are not in the business of providing medical services.

14.     Defendant PRINCESS invited the general public, including the Plaintiff, to become passengers aboard the vessel *Ruby Princess* in exchange for a monetary charge.

15.     As part of providing cruise vacations, Defendant PRINCESS advertised that the ship's medical facility was available and staffed with qualified and competent physicians.  Defendant PRINCESS represented to its passengers and prospective passengers on its website that "If you feel ill during your voyage, please immediately report to the medical center. All of our onboard medical facilities meet or exceed the standards established by the American College of Emergency Physicians. Our onboard medical facilities are staffed by full-time registered doctors and nurses."

16.     At all times herein material, Defendant PRINCESS charged passengers for medical services it provided and such charges are added to passenger shipboard accounts.  As such, Defendant PRINCESS is in the business of providing medical services for profit.  In fact, Defendant PRINCESS initially charged Plaintiff a fee for the medical care provided by Defendants VENTER and CALLAWAY and the medical staff aboard *Ruby Princess* as well as for medicine, supplies and medical equipment.  All of these medical care related charges were charged directly to the Plaintiff's onboard account with Defendant PRINCESS.

17.     At all times herein material, Defendant PRINCESS owned, operated, controlled, supervised, and/or maintained the medical facility aboard *Ruby Princess*.  Defendant PRINCESS maintained a shore side medical department with a Chief Medical Officer responsible for overseeing the operations of the

shipboard medical center including the selecting, purchasing, and maintaining the medical equipment and medications contained therein, recruitment, credentialing and staffing of shipboard medical centers with physicians and nurses; evaluations, training and coaching of shipboard physicians and acting as a resource to the shipboard medical personnel and providing guidance and instruction in the event of a medical emergency.

18.     At all times herein material Defendant PRINCESS was vicariously liable for the negligence of Defendants VENTER and CALLAWAY and all other doctors, nurses, paramedics, and other personnel working in the medical facility aboard *Ruby Princess*, who were employees, apparent agents, and/or actual agents of Defendant PRINCESS.

19.     At all times herein material, Defendant PRINCESS has control and/or the right to control any and all persons working in its medical department, including Defendants VENTER and CALLAWAY.

20.     Plaintiff relied upon Defendant PRINCESS' representations regarding its available shipboard medical facility with its qualified and competent physicians in his decision to purchase the subject cruise and in his subsequent decision to seek medical care while aboard the vessel.

## THE INCIDENT

21.     On or about February 4, 2017, Plaintiff while a fare paying passenger aboard the *Ruby Princess*, was inside her Stateroom C631 when she tripped and fell due to her foot being caught in a bed covering that had a several inch tear hole in it near the foot of her bed that was negligently provided by Defendant PRINCESS' housekeeping staff.  Plaintiff's fall resulted in a right wrist fracture, amongst other injuries, causing her to seek emergency medical care at the ship's medical center.

22.     On February 5, 2017, Defendant VENTER in collaboration with, and the advice of, Defendant CALLAWAY, examined Plaintiff's right wrist at the ship's

1  medical center and determined, after taking x-rays, to undergo closed treatment

2  of the fracture and immobilize her lower arm with a splint.  She was prescribed

3  Tylenol with Codeine and told to wait three days until February 7, 2017 when the

4  shipped docked in Puerta Vallarta to see a doctor at *Hospiten Puerto Vallarta*.

5  Defendants VENTER and CALLAWAY failed to diagnose that Plaintiff had

6  sustained a complex wrist fracture that required immediate surgical attention and

7  should have advised Plaintiff to medically disembark and return to the United

8  States for immediate surgical intervention. Instead, during those three days

9  Plaintiff was in an enormous amount of pain and despite several other pain

10 medications being prescribed her pain could not be tolerated.

11 23.    On February 7, 2017, Plaintiff was seen at *Hospiten Puerto Vallarta*,

12 where her wrist was set, casted with a plastic cast, and instructed to follow up

13 with her own doctor in four weeks.  When she went back on board the *Ruby*

14 *Princess*, Plaintiff received no medical follow up and continued to be in physical

15 and emotional agony the rest of the cruise.  Defendants VENTER and

16 CALLAWAY failed to follow up with Plaintiff and advise her of the need for her

17 immediate return to the United States for emergency surgical intervention.

18 24.    It was not until Plaintiff returned home to Utah and saw an orthopedic

19 specialist due to her excruciating pain that she properly advised that an open

20 reduction internal fixation of her complex wrist fracture was necessary; however,

21 due to the amount of time that elapsed from the date of injury until the date of the

22 surgery her right-hand functionality has severely diminished.

23 25.    It was also subsequently determined by an orthopedic specialist that from

24 her fall on February 4, 2017 on the *Ruby Princess* that Plaintiff had torn

25 ligaments in her right rotator cuff, which required a rotator cuff surgery.  Both of

26 these injuries have and will continue to require extensive physical therapy.

27 26.     Due to Defendant VENTER's and CALLAWAY'S inadequate

28 examination, diagnosis and care of Plaintiff's wrist and shoulder, Plaintiff has

7

and will continue to require extensive physical and occupational therapy. Plaintiff's right hand and arm will never function as before the injuries, affecting her fine motor movements, impacting her ability to work and her ability to play the piano which has been a lifelong passion and pursuit of hers.

27.     As a direct and proximate result of the incident alleged herein and the negligence, carelessness and the acts and omissions of Defendants PRINCESS, VENTER and CALLAWAY, and each of them, as hereinabove alleged, Plaintiff was hurt and injured in her health, strength and activity, sustaining severe physical injury to her body, and shock and injury to her nervous system and person, all of all of which injuries have caused and continue to cause mental, physical and emotional pain and suffering, loss of enjoyment of life, inconvenience in the normal pursuits and pleasures of life, humiliation and embarrassment to plaintiff.  Plaintiff is informed and believes, and thereupon alleges that some or all of her injuries will result in permanent damages, disability and pain and suffering and general damages to plaintiff in an amount to be proven at the time of trial.

28.     As a further direct and proximate result of the incident alleged herein and the negligence, carelessness and the acts and omissions of Defendants PRINCESS, VENTER and CALLAWAY, and each of them, as hereinabove alleged, it was necessary for Plaintiff to receive medical care and treatment, and Plaintiff did sustain an expense for such medical treatment, care, hospitalization, medicines, and for other and further medical and incidental care.  Plaintiff alleges the cost of the medical care and treatment and other special damages according to proof at trial.

29.     Plaintiff is informed and believes, and based thereupon alleges, that as a further direct and proximate result of the incident alleged herein and the negligence, carelessness and the acts and omissions of Defendants PRINCESS, VENTER and CALLAWAY, and each of them, as hereinabove alleged, she will

necessarily require additional medical care, hospitalization, medicines, and other and further medical attention in the future and will incur liability therefrom. The cost of further medical care and treatment is not known at this time, and Plaintiff alleges as damages herein the amount of such costs according to proof at trial.

30.     As a further direct and proximate result of the incident alleged herein and the negligence, carelessness and the acts and omissions of Defendants PRINCESS, VENTER and CALLAWAY, and each of them, as hereinabove alleged, Plaintiff became incapacitated and prevented from following her usual occupation for a period of time, and as a result thereof, Plaintiff suffered a loss of earnings and earning capacity and other financial losses and is informed and believes and thereupon alleges that she will suffer loss of future earnings and diminished earning capacity in the future in an undetermined amount. Plaintiff alleges as damages herein the amount of such past and future loss of earnings and earnings capacity in an amount according to proof at trial.

## FIRST CAUSE OF ACTION AGAINST DEFENDANT PRINCESS
### (Negligence-General Maritime Law)

31.     Plaintiff re-alleges paragraphs 1 through 30, and incorporates the same as a part hereof as though fully set forth herein.

32.     As the owner and operator of the vessel *Ruby Princess*, Defendant PRINCESS owed Plaintiff a duty to exercise reasonable care under the circumstances to avoid causing her personal injuries. Defendant PRINCESS had a further duty to warn Plaintiff of any dangerous conditions which were known to Defendant PRINCESS or could have been known to them by reasonable inspection.

33.     On or about February 4, 2017, Defendant PRINCESS breached its duty of care to Plaintiff, and as part of a continuous course of conduct, so negligently owned, operated, maintained, controlled, supervised and inspected the *Ruby Princess*, its gear and equipment, in a dangerous, unsafe, and defective condition,

and negligently:

    a.  failed to warn plaintiff of a dangerous and hazardous condition caused by a hole in the bed covering placed near the foot of her bed;

    b.  caused and/or allowed a bed covering with a hole in it to remain in the Stateroom and present a hazard to passengers using the Stateroom, including Plaintiff;

    c.  failed to properly inspect and maintain the bed covering;

    d.  failed to properly train, instruct and supervise employees to properly maintain, inspect, and/or repair the bed covering in the Stateroom;

    e.  failed to promulgate and/or enforce adequate polices and/or procedures so as to maintain reasonably safe conditions in the Stateroom and for the proper maintenance and inspection of the bed linens and coverings utilized in the Stateroom; and/or

    f.  failed to provide plaintiff a reasonably safe Stateroom; and

    g.  in other manners expected to be discovered during the course of ongoing investigation and discovery, all of which caused Plaintiff to fall sustaining a complex right wrist fracture and right rotator cuff injury.

34.    Additionally, on or about the above alleged date(s), Plaintiff was injured due to the fault, carelessness and negligence of Defendant PRINCESS and/or their agents, apparent agents, servants, and/or employees as follows:

    a.  Failure to hire competent and properly qualified ship's doctors; and/or

    b.  Failure to hire properly licensed ship's doctors which had the proper licenses in the jurisdiction of the flag of the ship on which they were hired to provide medical care, so as to be in violation of the law of the flag country with respect to the provision of medical services, and/or

    c.  Failure to disclose to passengers that the ship's doctors did not have the proper licenses in the jurisdiction of the flag of the ship on which they

were hired to provide medical care and were not competent and/or properly qualified; and/or

d.  Negligent reliance on the medical opinions and/or advice and/or instructions of the ship's doctors who were: (1) not properly qualified; and/or (2) failed to have the proper licenses in the jurisdiction of the flag of the ship on which they were hired to provide medical care; and/or (3) were incompetent; and/or

e.  Negligent retainer of ship's doctors which were incompetent and/or did not have the proper licenses in the jurisdiction of the flag of the ship on which they were hired to provide medical care, and/or

f.  Failure to use reasonable care to provide and maintain an adequate ship's medical facility, fit with proper, competent and adequate crew and equipment; and/or

g.  Failure to provide adequate training, instruction and supervision to crew members, particularly medical staff; and/or

h.  Failure to have and/or implement proper and adequate policies and procedures and/or equipment in effect to properly handle Plaintiff's medical condition; and/or

i.  Failure to promulgate and/or enforce policies and procedures aimed at hiring and/or retaining competent medical personnel; and/or

j.  Failure to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances; and/or

k.  Failure to properly examine, diagnose and treat Plaintiff for her medical conditions while aboard the *Ruby Princess*; and

l.  In other manners expected to be discovered during the course of ongoing investigation and discovery.

35.  At all times material hereto, Defendant PRINCESS knew of the forgoing conditions causing Plaintiff's injuries and damages and did not correct them, or

1    the conditions existed for a sufficient length of time so that Defendant in the

2    exercise of reasonable care and inspection under the circumstances should have

3    learned of them and corrected them.

4    36.    At all times material hereto, Defendant PRINCESS negligently failed to

5    determine the hazards on the *Ruby Princess* to Plaintiff, failed to eliminate the

6    hazard and failed to properly warn Plaintiff of the hazard. All of the above

7    caused the Plaintiff to be injured and/or which caused the Plaintiff's injuries to

8    be aggravated and made worse.

9    37.    In light of their knowledge, Defendant PRINCESS, negligently failed to

10   hire, train, and/or retain competent physicians, and instead, negligently hired and

11   retained incompetent and/or unqualified persons to act as ship's physician(s) who

12   failed to properly and/or timely examine, diagnose and/or treat Plaintiff's

13   medical condition.

14   38.    As a direct and proximate result of Defendant PRINCESS' breach of duty

15   of care owed to Plaintiff, Plaintiff was injured and suffered damages as aforesaid.

16                 **SECOND CAUSE OF ACTION AGAINST DEFENDANTS**

17                          **VENTER and CALLAWAY**

18                      **(Negligence-General Maritime Law)**

19   39.    Plaintiff re-alleges paragraphs 1 through 38, and incorporates the same as

20   a part hereof as though fully set forth herein.

21   40.    At all times relevant to this action Defendants VENTER and

22   CALLAWAY, were acting within the scope and course of their role as shipboard

23   physicians aboard the *Ruby Princess*.

24   41.    As the physicians that treated Plaintiff, Defendants VENTER and

25   CALLAWAY, owed Plaintiff a duty to provide him competent, reasonable,

26   prompt, proper, and appropriate medical care and to supervise the medical care

27   and treatment rendered by nurses and other medical personnel under their

28   authority in the medical center.

42.     Defendants VENTER and CALLAWAY either personally or as a result of the acts or omissions of the other staff in the medical facility under their authority for which they were responsible, breached their duty to exercise reasonable care under the circumstances owed to Plaintiff and were negligent and careless by committing the following acts and/or omissions, including but not limited to one or more of the following ways:

a.  Failing to properly and adequately examine Plaintiff;

b.  Failing to properly and timely assess and diagnose Plaintiff's condition;

c.  Failing to properly treat Plaintiff;

d.  Failing to medically evacuate Plaintiff from the *Ruby Princess* to obtain further prompt and proper care ashore;

e.  Failing to properly administer medications to Plaintiff;

f.  Failing to order appropriate diagnostic tests to further assess Plaintiff's condition;

g.  Failing to obtain consultations with appropriate specialists;

h.  Failing to properly monitor Plaintiff;

i.  Deviating from the standard of care for patients in Plaintiff's condition who exhibit his signs and symptoms;

j.  By breaching the prevailing professional standard of care for said health care providers, to wit: that level of care, skill and treatment which, in light of all relevant surrounding circumstances as recognized as acceptable and appropriate by a reasonably prudent similar health care provider; and/or

k.  In other manners expected to be discovered during the course of ongoing investigation and discovery.

43.     As a direct and proximate result of Defendants' breach of duty of care owed to Plaintiff, Plaintiff was injured and suffered damages as aforesaid.

**THIRD CAUSE OF ACTION AGAINST DEFENDANT PRINCESS**

**(Negligence – Vicarious Liability Under *Respondeat Superior*)**

44.     Plaintiff re-alleges paragraphs 1 through 43, and incorporates the same as a part hereof as though fully set forth herein.

45.     At all times herein material, the doctors and nurses aboard the *Ruby Princess* were the agents, apparent agents, servants, and/or employees of Defendant PRINCESS, which was therefore vicariously liable for the negligent treatment of Plaintiff under the legal principles set forth in *Franza v. Royal Caribbean Cruises Ltd.*, 772 F.3d 1225 (11th Cir. 2014).

46.     At all times herein material, Defendant PRINCESS owned, operated, controlled, and/or maintained the medical facility aboard the *Ruby Princess*, and was responsible for among other things and without limitation: overseeing the operations of the shipboard medical center, the selecting, purchasing, and maintaining of the medical equipment and medications contained therein, recruitment, credentialing and staffing of shipboard medical centers with physicians and nurses, setting the amount of pay and bonuses for the medical staff and paying their salaries and bonuses, establishing and enforcing the terms of employment of physicians and nurses including their hours, job duties and details of their work, evaluating, training and coaching of shipboard physicians, acting as a resource to the shipboard medical personnel and providing guidance and instruction in the event of a medical emergency in said medical facility, and establishing rules and protocols for the treatment of patients and the fees to charge for medical services.

47.     At all times material hereto, the vessel's doctors and nurses were subject to the control and/or right to control by Defendant PRINCESS.

48.     At all times herein material, the doctors and nurses aboard the *Ruby Princess* were acting within the scope of their employment and/or agency.

49.     At all times herein material, Defendant PRINCESS, had a duty to provide the Plaintiff with reasonable care under the circumstances.

50.     At all times herein material, the vessel's doctors and nurses owed a duty to provide Plaintiff with reasonable care under the circumstances.

51.     Between February 4, 2017 and February 11, 2017, Defendant PRINCESS, through its employees, servants, actual agents, and/or apparent agents, breached their duty to provide reasonable care under the circumstances owed to Plaintiff and were negligent and careless by committing the following acts and/or omissions, including but not limited to one or more of the following ways:

    a.  Failing to properly and adequately examine Plaintiff;

    b.  Failing to properly and timely assess and diagnose Plaintiff's condition;

    c.  Failing to properly treat Plaintiff;

    d.  Failing to medically evacuate Plaintiff from the *Ruby Princess* to obtain further prompt and proper care ashore;

    e.  Failing to properly administer medications to Plaintiff;

    f.  Failing to order appropriate diagnostic tests to further assess Plaintiff's condition;

    g.  Failure to obtain consultations with appropriate specialists;

    h.  Failure to properly monitor Plaintiff;

    i.  Deviating from the standard of care for patients in Plaintiff's condition who exhibit her signs and symptoms;

    j.  By breaching the prevailing professional standard of care for said health care providers, to wit: that level of care, skill and treatment which, in light of all relevant surrounding circumstances as recognized as acceptable and appropriate by a reasonably prudent similar health care provider; and/or

    k.  In other manners expected to be discovered during the course of ongoing investigation and discovery.

52.     As a direct and proximate result of the vessel's doctors' negligence, for which Defendant PRINCESS is vicariously liable on the theory of *respondeat superior*, Plaintiff was injured and suffered damages as aforesaid.

### FOURTH CAUSE OF ACTION AGAINST DEFENDANT PRINCESS
### (Negligence – Vicarious Liability Under Apparent Agency)

53.     Plaintiff re-alleges paragraphs 1 through 52, and incorporates the same as a part hereof as though fully set forth herein.

54.     At all times herein material, Defendant PRINCESS held out its medical staff including its doctors and nurses, as being its employees who work in the Defendant's medical centers aboard its vessels and the *Ruby Princess*, promoted its medical staff as being its employees in brochures, internet advertising and on the vessel, and held out its staff, including Defendants VENTER and CALLAWAY as being direct employees or its actual agents.

55.     At all times herein material, the vessel's doctors, nurses and paramedics, including Defendants VENTER and CALLAWAY, were represented to the Plaintiff and the ships' passengers as employees and/or agents and/or servants of Defendant PRINCESS, in that:

    a.  They worked in the ship's medical facility aboard the vessel, which was owned and operated by Defendant PRINCESS; and/or

    b.  They wore a ship's uniform provided by Defendant PRINCESS; and/or

    c.  They represented themselves as the "ship's medical crew" to the Plaintiff; and/or

    d.  The vessel's doctors were called ship's officer(s) by Defendant PRINCESS, the ship's officers and the crew; and/or

    e.  They ate with the ship's crew; and/or

    f.  They were under the commands of the ship's officers and followed all of the master's rules and regulations; and/or

  g. Their charges for medical treatment are charged to passengers' onboard accounts and are paid to Defendant PRINCESS; and/or

  h. The literature provided by Defendant PRINCESS and its representatives showed the doctor(s) and/or nurse(s) as crewmembers and employees of PRINCESS; and/or

  i. There were PRINCESS insignias in various places inside the ship's medical facility where the vessel's doctors, nurses and paramedics worked; and/or

  j. They were employed full-time by Defendant PRINCESS; and/or

  k. They were paid a salary by Defendant PRINCESS; and/or

  l. They spoke to Plaintiff as though they had authority to do so by Defendant PRINCESS.

56. It was reasonable for the Plaintiff to believe that the vessel's doctors, nurses and paramedics were PRINCESS' agents because they wore ship's uniforms and admitted Plaintiff to the ship's medical facility. In addition, at all times material hereto, the vessel's doctors, nurses and paramedics spoke and acted as though they were authorized to do so by PRINCESS.

57. At all material times hereto, Plaintiff reasonably relied on the representations of Defendant PRINCESS and the vessel's doctors, nurses and paramedics (that they were employees and/or agents and/or servants of PRINCESS) to her detriment.

58. At all times material hereto, Defendant PRINCESS knew of the vessel's doctors', nurses and paramedics' agency representations and allowed them to represent themselves as such.

59. Defendant PRINCESS is estopped from denying that the vessel's doctors, nurses and paramedics were their apparent agents and/or apparent employees and/or apparent servants.

60.     Between February 4, 2017 and February 11, 2017, the vessel's doctors breached their duty to provide reasonable care under the circumstances by:

    a. Failing to properly and adequately examine Plaintiff;

    b. Failing to properly and timely assess and diagnose Plaintiff's condition;

    c. Failing to properly treat Plaintiff;

    d. Failing to medically evacuate Plaintiff from the *Ruby Princess* to obtain further prompt and proper care ashore;

    e. Failing to properly administer medications to Plaintiff;

    f. Failing to order appropriate diagnostic tests to further assess Plaintiff's condition;

    g. Failure to obtain consultations with appropriate specialists;

    h. Failure to properly monitor Plaintiff;

    i. Deviating from the standard of care for patients in Plaintiff's condition who exhibit her signs and symptoms;

    j. By breaching the prevailing professional standard of care for said health care providers, to wit: that level of care, skill and treatment which, in light of all relevant surrounding circumstances as recognized as acceptable and appropriate by a reasonably prudent similar health care provider; and/or

    k. In other manners expected to be discovered during the course of ongoing investigation and discovery.

61.     At all times herein material, Defendant PRINCESS breached their duty to provide Plaintiff with reasonable care under the circumstances through the above acts of their agents and/or employees and/or servants, including the vessel's doctors.

62.     As a direct and proximate result of the vessel's doctors' negligence, for which Defendant PRINCESS is vicariously liable on a theory of apparent agency and/or agency by estoppel, Plaintiff was injured and suffered damages as

18

1   aforesaid.

2   ## **PRAYER**

3   WHEREFORE, Plaintiff DIANE GEIGER prays for damages against

4   Defendants, and each of them, as follows:

5   1. For general damages according to proof;

6   2. For medical expenses, past and future according to proof;

7   3. For loss of earnings and earning capacity, past and future, according to

8   proof;

9   4. For prejudgment interest;

10  5. For costs of suit; and

11  6. For other such relief as the Court may deem proper.

12

13  Dated: February 2, 2018          **LAW OFFICES OF MICHAEL RIX**

14                                    By: _/S/ Michael G. Rix_

15                                    Michael G. Rix, Esq.
                                      Attorneys for Plaintiff,
16                                    DIANE GEIGER

17

18  ## **DEMAND FOR JURY TRIAL**

19

20  Plaintiff, DIANE GEIGER, hereby demands trial by jury of the above-

21  captioned matter.

22

23  Dated: February 2, 2018          **LAW OFFICES OF MICHAEL RIX**

24                                    By: _/S/ Michael G. Rix_

25                                    Michael G. Rix, Esq.
                                      Attorneys for Plaintiff,
26                                    DIANE GEIGER

27

28